Filed 6/28/22 P. v. Gomez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE PEREZ GOMEZ,<br><br>Defendant and Appellant. | F081222<br><br>(Super. Ct. No. BF171195A)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County. John R. Brownlee, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Franson, J. and Peña, J.

Appointed counsel for defendant Jose Perez Gomez asked this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant did not respond. After requesting supplemental briefing on the applicability and effect of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) to this case, we conclude the failure to submit aggravating circumstances to the jury was not harmless error. We vacate defendant's sentence and remand for resentencing consistent with Senate Bill 567.

## BACKGROUND

Defendant, who was 58 years old when he testified, had 13 biological children—ranging from three to 42 years old—with eight different women. Four of the children in his family, not all his biological children, testified that he molested them. One of them, Jane Doe, was his biological daughter. When she was eight years old, she moved to California with her mother and two half-siblings and began living with defendant. Doe had cerebral palsy and required help with bathing and dressing until she was 11 years old. From the time Doe was eight years old until she was 12 years old, defendant touched her breasts, vagina, and buttocks, and threatened to kill her or her family if she told anyone. He touched her in different rooms of their various residences, including in the bathroom when he was helping her shower and dress, which he continued to do even after Doe was able to shower and dress herself. When Doe told her grandmother about the touchings, her grandmother called the police and defendant was apprehended.

During an interview with a detective, defendant repeatedly denied ever touching the children inappropriately, then eventually admitted that he caught Doe masturbating with her pants down and told her she was doing it wrong. She asked him to show her how to do it, so he touched her to demonstrate.

At trial, defendant testified on his own behalf. He said he loved all his children, whether biological or not. He denied touching any of them for sexual gratification. He

2.

said Doe needed help due to her cerebral palsy, and she had low self-esteem because of her handicap. She bonded with him, trusted him, and wanted him to be involved in her life. They loved each other and he helped her a lot. He explained that Doe was highly sexualized because of the sexual abuse she had experienced before she moved to California. When he caught her masturbating in the living room, he told her it was inappropriate. She asked him to do it for her and show her how to do it. At first, he refused, but then he touched her over her clothes for a moment and removed his hand quickly. Afterward, he knew it was inappropriate, even though it was only for " 'educational purposes.' "

On April 16, 2018, the Kern County District Attorney charged defendant with 15 counts of sexual offenses against the four children. Counts 6, 7, and 8 involved Doe as the victim.

On December 23, 2019, a jury convicted defendant of only one count—of committing a lewd and lascivious act on Doe, a child under 14 years of age (Pen. Code,[1] § 288, subd. (a); count 7) by touching her vagina. The trial court declared a mistrial on the remaining 14 counts.[2]

At the sentencing hearing on May 21, 2020, the trial court found no mitigating circumstances and four aggravating circumstances. The court sentenced defendant to the upper term of eight years on count 7, imposed various fines and fees, and awarded custody credits.

The same day, defendant filed a notice of appeal.

On June 5, 2020, rather than facing retrial on the remaining counts, defendant pled no contest to three more counts of section 288, subdivision (a) violations—counts 4, 8,

---

[1] All further statutory references are to the Penal Code.

[2] On counts 1, 2, 3, 5, 6, 8, and 9, the jury voted 10 to two for guilty. On counts 4, 12, 14, and 15, the jury voted nine to three for guilty. On counts 11 and 13, the jury voted seven to five for guilty.

and 11—in return for a stipulated 12-year prison sentence, to be served consecutively to the eight-year term on count 7.

Subsequently, on July 23, 2020, the parties recognized that the terms on counts 4, 8, and 11 would not amount to the agreed-upon 12 years, so defendant pled no contest to three more counts of section 288, subdivision (a) violations—counts 5, 6, and 12.

The same day, the trial court sentenced defendant to consecutive two-year terms (one-third the midterm of six years) on counts 4, 5, 6, 8, 11, and 12, adding up to 12 years, to be served consecutively to the eight-year term on count 7, resulting in a total sentence of 20 years in prison. The court again imposed various fines and fees, and awarded custody credits.

On January 12, 2021, the trial court corrected custody credits and issued an amended abstract of judgment.

Defendant did not file a notice of appeal following the convictions on counts 4, 5, 6, 8, 11, and 12.

## DISCUSSION

We requested supplemental briefing on the application of Senate Bill 567 and section 1170, subdivision (b) to this case. The parties agree, as do we, that Senate Bill 567 applies retroactively to this case (see *In re Estrada* (1965) 63 Cal.2d 740) and the facts underlying the aggravating circumstances relied upon by the trial court were not proved as required by section 1170, subdivision (b), but the parties disagree as to whether remand for resentencing is required. The People argue that the sentence need not be vacated and the matter remanded because "a jury would have found one of four aggravating factors relied on by the trial court to be true beyond a reasonable doubt." For the proposition that error is harmless if a reviewing court concludes beyond a reasonable doubt that the jury would have found one aggravating circumstance true beyond a reasonable doubt, the People rely upon *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*) as extended by *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*). As

4.

we will explain, *Sandoval* does not control in this situation. Instead, in order for any error to be harmless, we must conclude: (1)(a) beyond a reasonable doubt that at least one aggravating circumstance would have been proved to the jury beyond a reasonable doubt and (1)(b) there is no reasonable probability that the jury would not have found the remaining aggravating circumstances true beyond a reasonable doubt. If we so conclude, the error was harmless. If we conclude beyond a reasonable doubt that at least one circumstance was provable,[3] we must ask (2) whether there is a reasonable probability that the trial court would have imposed a lesser sentence based on the aggravating circumstances found true. If so, we vacate the sentence and remand for resentencing. If not, the error was harmless.

In this case, we conclude that the aggravating circumstances were not found true consistent with section 1170, subdivision (b) and the error was not harmless.[4] We will therefore vacate the sentence and remand for resentencing consistent with section 1170, subdivision (b).

## A. Additional Background

At sentencing, the trial court reviewed the probation report, then stated the following:

> "All right. Circumstances in mitigation are none.
>
> "Circumstances in aggravation are the defendant took advantage of a position of trust to commit the offense in that he was the victim's father.

---

**3** If we conclude that no factor was provable beyond a reasonable doubt, the sentence violates the Sixth Amendment pursuant to *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) and *Sandoval* and must be vacated and the defendant resentenced.

**4** Throughout our discussion, we refer to section 1170, subdivision (b) "error." However, we note that at the time the trial court sentenced defendant, it correctly applied the then-existing law. Accordingly, while we refer to section 1170, subdivision (b) "error," we are mindful that the trial court complied with the applicable law at the time of sentencing.

"Defendant's prior convictions as an adult are numerous.

"Defendant's prior performance on misdemeanor probation was unsatisfactory, in that he violated or reoffended.

"And the victim was particularly vulnerable, in that she has a physical disability.

"Defendant does qualify for punishment in the California Department of Corrections and Rehabilitation, based on the current offense. There are no statutory provisions that would limit or prohibit a grant of felony probation to the defendant in this case.

"However, the defendant shall not be granted probation until a psychological evaluation is completed, pursuant to [section] 288.1 .…

"As to probation suitability, a child with a physical disability was sexually molested at the hands of her caretaker. That was the child's very own father. The child could not protect herself and look toward her father to keep her safe and protected. It's unknown the [l]asting effects this violation will have on the victim, both mentally and emotionally.

"Although the defendant is legally eligible for probation, he is considered an unsuitable candidate for a grant of felony probation and the underlying offense warrants a prison sentence.

"After review of aggravating factors and none in mitigation, the upper term is justified.

"Therefore, the defendant will be sentenced as follows: As to [c]ount 7, a violation of … [s]ection 288[, subdivision] (a), probation will be denied and the defendant will be sent to the Department of Corrections for the upper term of eight years."

## B. Analysis

At the time defendant was sentenced, former subdivision (b) of section 1170 largely left it to a sentencing court's "sound discretion" to select the appropriate term within a sentencing triad that "best serves the interests of justice." (Former § 1170, subd. (b).) While defendant's appeal was pending, the Legislature enacted Senate Bill 567, which amended section 1170, subdivision (b), making the middle term the presumptive term and limiting the situations in which an upper term can be imposed.

(Stats. 2021, ch. 731, § 1.3.) Effective January 1, 2022, a court must "order imposition of a sentence not to exceed the middle term," except under narrow circumstances. (§ 1170, subd. (b)(1).) An upper term may be imposed only when there are aggravating circumstances that justify imposition of the upper term and "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) As an exception to the general rule, the trial court is permitted to rely upon a certified record of conviction to determine prior criminality for purposes of sentencing without submitting the prior conviction to a jury. (§ 1170, subd. (b)(3).)

As a threshold matter, as the parties agree, as do we, Senate Bill 567 is retroactive to cases not yet final on appeal pursuant to *In re Estrada*, *supra*, 63 Cal.2d 740 (see *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039) and defendant's sentence is not yet final on appeal.

In this case, the trial court articulated four circumstances in aggravation: defendant took advantage of a position of trust, defendant suffered numerous prior convictions, defendant's "performance on misdemeanor probation was unsatisfactory, in that he violated or reoffended[,]" and "the victim was particularly vulnerable, in that she ha[d] a physical disability." None of the facts underlying those circumstances was found true by the jury beyond a reasonable doubt. Nor does the record reflect that the trial court found defendant's prior convictions true based on certified records of convictions. Nevertheless, the upper term was imposed on count 7. The sentence imposed is therefore not in compliance with section 1170, subdivision (b)(2), as amended by Senate Bill 567. Therefore, unless imposition of the upper term on count 7 was harmless, the sentence must be vacated and the matter must be remanded to the trial court for resentencing in compliance with section 1170, subdivision (b).

To explain our disagreement with *Flores*'s extension of *Sandoval*, we consider the origin of the harmless error standard it applied. In *Cunningham*, *supra*, 549 U.S. 270, the

Supreme Court held that California's determinate sentencing law (as it existed from 1977 to 2007) violated the Sixth Amendment right to a jury trial because it permitted a trial judge to determine facts (other than a prior conviction) that would allow imposition of a sentence in excess of the statutory maximum.[5] (*Cunningham*, at pp. 275–276.) As *Cunningham* explained, the Supreme Court had long held that any fact that permitted imposition of a sentence beyond the statutory maximum had to be proved to a jury beyond a reasonable doubt. (*Id*. at p. 281.) Under the California determinate sentencing law, a statutory presumption existed that " '[t]he middle term [would] be selected unless imposition of the upper or lower term [was] justified by circumstances in aggravation or mitigation.' " (*Id*. at p. 278.) Under the then-existing statutory scheme, those circumstances in aggravation or mitigation—and the underlying facts related to those circumstances—were to be determined by the trial court, not the jury. (*Ibid*.) The Supreme Court therefore determined that the imposition of an upper term without having the facts underlying the aggravating circumstances proved to a jury beyond a reasonable doubt violated the Sixth Amendment. (*Id*. at p. 293.)

In *Sandoval*, our Supreme Court considered whether an upper-term sentence imposed pursuant to the pre-*Cunningham* determinate sentencing law—i.e., imposed based on judicial findings of fact on circumstances in aggravation—was harmless error under the Sixth Amendment. (*Sandoval*, *supra*, 41 Cal.4th at p. 837.) It explained that the trial court had relied upon six aggravating circumstances, none of which had been proved to a jury, admitted by the defendant, or based on the fact of a prior conviction. (*Id*. at pp. 837–838.) The upper-term sentence therefore violated the defendant's Sixth Amendment rights under *Cunningham*. The *Sandoval* court then considered whether the violation was harmless. To that end, it articulated the following standard:

---

[5] In the Sixth Amendment context, the statutory maximum " 'is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.' " (*Cunningham*, 549 U.S. at p. 275.)

"if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Sandoval*, at p. 839.) In the Sixth Amendment context, the issue was whether the "defendant [was] *eligible* for the upper term …"; the trial court's consideration of additional factors not proved to a jury was not a federal constitutional question. (*Id*. at p. 839.)

As noted, in *Flores*, the Court of Appeal for the First District, Division Three extended the standard for harmless error applied in the Sixth Amendment context in *Sandoval* to section 1170, subdivision (b)(2) error.[6] (*Flores*, *supra*, 75 Cal.App.5th at pp. 500–501.) The Court of Appeal for the Fourth District, Division One disagreed with *Flores* on that point. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465–468, & 468, fn. 11 (*Lopez*).)

The court in *Lopez* agreed with *Flores* that section 1170, subdivision (b)(2) error is subject to a harmless error analysis: "where a sentencing factor must be found true by a jury beyond a reasonable doubt and the court fails to submit that factor to the jury, the error in the court's reliance on that fact may be subject to harmless error review as to whether the lack of a finding by the jury was prejudicial …." (*Lopez*, *supra*, 78 Cal.App.5th at p. 465.) But *Lopez* disagreed with *Flores* on the correct standard for harmlessness. Instead of the *Sandoval* harmless error standard, the *Lopez* court applied the following two-part standard for harmlessness: First, "[i]n order to conclude that the trial court's reliance on improper factors that were not found true by a jury[,] … admitted by [the defendant, or based on certified records of conviction] was not prejudicial, [the reviewing court] would have to conclude beyond a reasonable doubt that a jury would

---

[6] The *Flores* court did not explain why it concluded that the harmless error test applied in *Sandoval* applies in this context.

9.

have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury (see § 1170, subd. (b))." (*Lopez*, at pp. 465–466.) According to *Lopez*, if that conclusion is made, the defendant has suffered no prejudice. (*Id.* at p. 467 & fn. 11.) If not, the reviewing court "then consider[s] the second question, which is whether [it] can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836 [(*Watson*)], that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*Lopez*, at p. 467, fn. 11.)

*Lopez* reasoned it is not enough that the reviewing court conclude that a trial court was *permitted* to impose the upper term because the jury would have found true a single aggravating circumstance beyond a reasonable doubt; whether the trial court *could have* imposed the upper term did not completely resolve the issue. (*Lopez, supra*, 78 Cal.App.5th at p. 467.) Instead, when a reviewing court concludes beyond a reasonable doubt that a jury would have found true fewer than all the aggravating circumstances beyond a reasonable doubt, it must still ask whether it is reasonably probable the trial court "*would have exercised its discretion*" to impose a sentence less than the upper term in the absence of the unproved aggravating circumstance(s). (*Ibid.*)

We agree with the *Lopez* court that a reviewing court finding beyond a reasonable doubt that the jury would have found a single aggravating circumstance true beyond a reasonable doubt is insufficient to conclude that the error was harmless. In other words, we disagree with *Flores* that *Sandoval* is applicable in this context. We further agree that

10.

the second step of the *Lopez* analysis—considering whether the trial court would have imposed a lesser term in absence of the aggravating circumstances not provable on the record before the reviewing court—is necessary. To find that section 1170, subdivision (b) error is harmless when fewer than all of the circumstances relied upon by the trial court could have been proved to the jury, we must determine whether the trial court would nevertheless have imposed the upper term based on the remaining aggravating circumstances.

Despite our agreement with *Lopez* on the majority of the standard it articulated, we are unconvinced that the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*)—applicable to errors implicating federal constitutional rights—must be applied to *all* aggravating circumstances in the *Lopez* court's first step. *Lopez* does not provide a clear explanation for why the *Chapman* standard for harmless error applies to all aggravating circumstances. Indeed, the only citation that the *Lopez* court provides for the proposition that *Chapman* applies to every aggravating circumstance is citation to section 1170, subdivision (b), itself. While *Sandoval* directs that at least one aggravating circumstance must be proved to the *Chapman* harmless error standard to satisfy the Sixth Amendment (i.e., for it to be *permissible* for the trial court to impose the upper term consistent with the Sixth Amendment), ordinary errors of state law are subject to review pursuant to *Watson*, *supra*, 46 Cal.2d 818.[7] (*People v. Breverman* (1998) 19 Cal.4th 142, 171 [when a state statutory right to a jury determination is violated, such error "is state law error alone, and

---

[7]     The test under *Watson* is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.) In this context, the question for the reviewing court would be whether there is a reasonable probability that the trial court would not have found the aggravating circumstance(s) true beyond a reasonable doubt.

thus subject, under article VI, section 13 of the California Constitution, to the *Watson* harmless error test"; "the state-created right to jury determination" does not implicate federal due process interests].)

We note that the *Chapman* standard of harmless error is compelled when an element of an offense or a sentencing factor necessary to impose a sentence above the statutory maximum is not presented to the jury. (*Washington v. Recuenco* (2006) 548 U.S. 212, 220 [firearm enhancement sentencing factor harmless error is decided pursuant to *Chapman*]; *People v. French* (2008) 43 Cal.4th 36, 52–53 [applying only *Chapman* where the trial court imposed the upper term based on *one* aggravating circumstance and that circumstance was not proved to the jury].) A fact that is *necessary* to impose a sentence above the statutory maximum must be proved to a jury beyond a reasonable doubt. However, as *Sandoval* has made clear, when multiple aggravating circumstances not proved to the jury are relied upon by a trial court in imposing the upper term, the reviewing court must only conclude beyond a reasonable doubt that *one* of those circumstances would have been found true by the jury beyond a reasonable doubt to avoid offending the Sixth Amendment. (*Sandoval*, *supra*, 41 Cal.4th at p. 839 ["so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury"].) Accordingly, one aggravating circumstance must be reviewed pursuant to *Chapman*, but the remaining aggravating circumstances involve only a state-created right to a jury trial that must be reviewed pursuant to *Watson*.

In sum, we think the correct standard for harmless error lies between the standards articulated in *Flores* and *Lopez*; *Flores* sets too low a standard for harmlessness and *Lopez* too high. We instead apply a version of the standard articulated in *Lopez*, modified

12.

to incorporate *Watson* in the first step: The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If the aggravating circumstances would have been proved to the respective standards, any error was harmless. If not, we move to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, we vacate the sentence and remand for resentencing consistent with section 1170, subdivision (b).

With that standard in mind, we revisit the aggravating circumstances relied upon by the trial court. As noted, the trial court relied upon defendant having taken advantage of a position of trust, defendant having suffered numerous prior convictions, defendant's unsatisfactory "performance on misdemeanor probation …, in that he violated or reoffended[,]" and "the victim['s] particular[] vulnerab[ility], in that she ha[d] a physical disability."

We conclude beyond a reasonable doubt the jury would have found true beyond a reasonable doubt at least one aggravating circumstance: that defendant had numerous prior convictions as an adult.[8] Defendant's history of convictions is well documented; the probation report sets out numerous convictions committed over about 33 years. Defendant did not object to the criminal history set out in the probation officer's report and there is no logical reason he would not have done so if the report had been inaccurate.

---

[8] We note that defendant's criminal history did not need to be proved to a jury. The trial court could instead have relied upon a certified record of conviction for those offenses. (§ 1170, subd. (b)(3).)

13.

We further conclude that there is no reasonable probability[9] that the jury would not have found true beyond a reasonable doubt that defendant's performance on misdemeanor probation was unsatisfactory, insofar as he was convicted of new offenses while on probation and violated probation repeatedly between 1989 and 2007.[10] As with defendant's history of criminal convictions, defendant's violations of probation by commission of new offenses can be proved by court records, specifically those granting probation and reflecting admission of probation violations and commission of new offenses.

We cannot, however, come to the same conclusion regarding the two remaining aggravating circumstances in light of the jury's hung verdicts, two of which involved Doe as the victim. The jury did not unanimously find that defendant penetrated Doe's vagina with his finger (count 6) or touched her breast (count 8), suggesting that the two holdout jurors may have believed that defendant touched Doe's vagina when she was masturbating and did not otherwise touch her. They may also have believed that Doe was overly sexualized and that defendant did not take advantage of her trust, but instead touched her because she asked him to. Thus, we cannot say with confidence sufficient to meet the *Chapman* or *Watson* standards that the jury would have found beyond a reasonable doubt that defendant took advantage of a position of trust to commit the offense.

---

[9]     We would reach the same conclusion if we applied the *Chapman* standard.

[10]     Defendant appears to have violated probation every time it was granted to him between 1989 and 2007. Nevertheless, defendant also appears to have been repeatedly reinstated on probation after his violations. While we note that whether a jury would have found that defendant's prior performance on misdemeanor probation was "unsatisfactory" is a somewhat subjective determination, defendant's repeated violations of probation and new convictions support our conclusion—the jury would have found beyond a reasonable doubt that defendant's performance was unsatisfactory.

14.

Further, we cannot say that the jury would have found that Doe was particularly vulnerable because of her physical disability. This would have been a subjective assessment for the jury, based on more than the simple fact that Doe had a disability, and we cannot say how the jury would have assessed her. (*Sandoval*, *supra*, 41 Cal.4th at p. 840 ["it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"].)

Left with only two of four the circumstances in aggravation relied on by the trial court, and in light of the changes brought about by Senate Bill 567, we conclude that there is a reasonable probability that the trial court would have imposed a lesser term of imprisonment on count 7.

In summary, we conclude the jury unquestionably would have found true two aggravating circumstances, provable by official records; however, because we could not conclude that there is no reasonable probability the trial court would not have imposed a lesser term in light of the fewer aggravating circumstances provable from the record, we must vacate defendant's sentence and remand for resentencing.

We express no opinion regarding the appropriate sentence on remand.

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded for resentencing consistent with section 1170, subdivision (b).